UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────

RITA H. MATTHEWS,

                                        Plaintiff,

              -vs-

                                                    05-CV-0871-C

MICHAEL J. ASTRUE[1]
Commissioner of Social Security,

                                        Defendant.

─────────────────────────────────────────

        Plaintiff Rita Matthews initiated this action pursuant to Section 405(g) of the Social

Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of

Social Security (the "Commissioner") denying plaintiff's application for Supplemental

Security Income ("SSI") benefits.  The Commissioner has filed a motion requesting reversal

of her decision and remand for further administrative proceedings pursuant to 42 U.S.C.

§ 405(g) (Item 9), and plaintiff has filed a cross-motion for judgment on the pleadings (Item

10).   To the extent that the Commissioner seeks remand for further proceedings, the

Commissioner's motion is denied, and plaintiff's cross-motion is granted.


                                **BACKGROUND**

        Plaintiff originally applied for Supplemental Security Income ("SSI") benefits on

August 19, 1996, alleging disability due to diabetic neuropathy, asthma, and Crohn's

───────────────────────

        [1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007 and is
therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

disease  (Tr. 125-28).[2]  Plaintiff's application was denied initially and on reconsideration (Tr. 93-96, 99-102).  Plaintiff requested a hearing, which was held on November 9, 2000 before Administrative Law Judge ("ALJ") Robert T. Harvey, at which plaintiff testified and was represented by counsel (Tr. 33-90).  On February 22, 2001, ALJ Harvey issued a decision finding plaintiff was not disabled, as defined in the Social Security Act (the "Act") (Tr. 16-26).  The determination was affirmed by the Appeals Council on August 2, 2001 (Tr. 5-6).

Plaintiff filed a civil action in the United States District Court for the Western District of New York on August 20, 2001.   Upon stipulation between plaintiff and the Commissioner, the case was remanded on June 14, 2002.  This was confirmed by an order of the District Court (Tr. 593-97).  On December 4, 2002, the Appeals Council vacated the ALJ's decision and remanded the case for a new hearing.  The Remand Order instructed the ALJ to give further consideration to the opinion of plaintiff's treating physician; further evaluate plaintiff's mental impairment; obtain additional evidence to clarify the nature and severity of plaintiff's mental impairment; and, if needed, obtain supplemental evidence from a vocational expert (Tr. 598-600).

Prior to the remand, plaintiff filed a second application for SSI benefits on August 23, 2001 (Tr. 613-15).  The Appeals Council expedited plaintiff's second application for SSI and consolidated both cases for an administrative hearing (Tr. 511-12).  A hearing was held on November 4, 2003, again in front of ALJ Harvey, where plaintiff appeared with

---

[2]References preceded by "Tr." are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint (Item 5).

counsel.  At the hearing, the ALJ heard evidence from plaintiff, medical expert Ralph Sibley, and vocational expert Jay Steinbrenner (Tr. 509-572).

By decision dated November 26, 2003, ALJ Harvey found that plaintiff was not under a disability within the meaning of the Act (Tr. 497-508).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. § 404.1520), the ALJ reviewed the medical evidence and determined that the plaintiff's impairments (including discongenic and degenerative disc disease of the cervical spine, an anterior cervical discectomy and fusion, insulin dependent diabetes mellitus, peripheral neuropathy asthma, Crohn's disease, a discongenic lumbar spine, status post right shoulder acromioplasty and rotator cuff repair, status post left shoulder acromioplasty and excision of distal clavicle, status post fracture of the right foot at the fifth metatarsal, psoriasis, a history of substance abuse, depression, anxiety, a post-traumatic stress disorder, a bipolar disorder, and manic depression), while severe, did not meet or equal the criteria of an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ considered plaintiff's allegations and testimony regarding her functional limitations, but found plaintiff "was generally not a credible witness" (Tr. 504).  The ALJ concluded that while plaintiff was unable to perform her past relevant work experience as a cashier/stocker, stock clerk, retail, bus monitor, bus driver, babysitter and data entry clerk, plaintiff had the residual functional capacity to perform light work[3]

---

[3]"Light work" is defined in the Commissioner's regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the

which, when considered along with plaintiff's age of 51, and more than a high school

education, led to the conclusion that during the period of August 19, 1996 through June 12,

2002, the claimant was a younger individual and there were a significant number of jobs

in the national economy that plaintiff could perform.  However, as of June 13, 2002, the

ALJ found that with the onset of additional mental limitations, there were no jobs existing

in the national economy that the plaintiff could perform (Tr. 505-06).  On October 29, 2005,

the Appeals Council affirmed ALJ Harvey's decision, making it the final decision of the

Commissioner (Tr. 491-93).

Plaintiff then filed this action on December 13, 2005, pursuant to the judicial review

provision of 42 U.S.C. § 405(g).  On August 1, 2006, the Commissioner filed a motion

requesting reversal of her decision and remand for further administrative proceedings

pursuant to 42 U.S.C. § 405(g) (Item 9).  On August 8, 2006, plaintiff filed a cross-motion

for judgment on the pleadings (Item 10).

For the following reasons, the Commissioner's motion for remand is granted in part,

plaintiff's cross-motion is granted, and the case is remanded for the purpose of calculating

benefits.

## **DISCUSSION**

### I.    **Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's

decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial

---

ability to do substantially all of these activities. If someone can do light work, we
determine that he or she can also do sedentary work, unless there are additional limiting
factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. "The court's sole inquiry is 'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D.Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II.    Standard for Determining Eligibility for Disability Benefits

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a). The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 416.920(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. 20 C.F.R. § 416.920(f). Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity. 20 C.F.R. § 920(g); *see Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner ordinarily meets his burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids").[4] However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date, August 19, 1996 (Tr. 501). Upon exhaustive review of plaintiff's medical records, and in accordance with the second and third step of the sequential evaluation, the ALJ found that plaintiff suffered from discongenic and degenerative disc disease of the cervical spine, an anterior cervical discectomy and fusion, insulin dependent diabetes mellitus, peripheral neuropathy asthma, Crohn's disease, a discongenic lumbar spine, status post right shoulder acromioplasty and rotator cuff repair, status post left shoulder acromioplasty and excision of distal clavicle, status post fracture of the right foot at the fifth metatarsal, psoriasis, a history of substance abuse, depression, anxiety, a post traumatic stress disorder, a bipolar disorder, and manic depression. While

---

[4]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education, and work experience in determining whether the claimant can engage in any substantial gainful work existing in the national economy. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

"severe," these conditions did not, individually or in combination, meet, or equal the requirements of the Listings (Tr. 502).

At the fourth step of the evaluation process, the ALJ determined that the plaintiff was unable to perform functions of her past relevant work experience as a cashier/stocker, stock clerk, retail, bus monitor, bus driver, babysitter, and data entry clerk.  However, the ALJ determined that from the period of August 19, 1996 through June 12, 2002, given the plaintiff's younger age and post-high school education level, the plaintiff could perform light work, including the jobs of a mail clerk and office helper.  Both jobs were found in significant numbers in the national economy.  The ALJ further found that as of June 13, 2002, the plaintiff was disabled due to the onset of additional mental limitations (Tr. 500-06).

In her motion for judgment on the pleadings, plaintiff seeks reversal of the unfavorable determination for the period of August 19, 1996 through June 12, 2002 and remand for the purpose of calculation and payment of benefits, arguing that remand for further proceedings would serve no purpose.  In support of her motion, the plaintiff points out that there is more than sufficient evidence to support a finding of disability for the period in question, and the finding of the onset date of June 13, 2002 is arbitrary.  The Commissioner acknowledges that a remand is necessary because the ALJ did not properly analyze the testimony of the medical expert Dr. Sibley.  What follows is the court's assessment of the scope of remand in light of the ALJ's failure to properly analyze the opinion of Dr. Sibley.

### III.  Commissioner's Request for Remand

In her motion papers, the Commissioner requests a remand for further administrative proceedings, conceding that the ALJ did not properly analyze Dr. Sibley's testimony.  Specifically, the Commissioner concedes that the ALJ erred in rejecting Dr. Sibley's definition of the term "fair" in his assessment of plaintiff's ability to do work-related activities.  At the November 4, 2003 hearing, Dr. Sibley testified that after a review of the plaintiff's medical records, he thought she had a "fair" ability to perform a normal workday or workweek, including working at a consistent pace, accepting instructions, responding appropriately to criticism from supervisors and responding appropriately to changes in the workplace.  Dr. Sibley testified that the term "fair", in his opinion, meant that someone could perform those activities satisfactorily less than half of the time (Tr. 546-47, 923). Despite Dr. Sibley's testimony, the ALJ concluded in his decision that the term "fair" meant that the limitation was only occasional, or less than1/3 of the time (Tr. 503).  Thus, the ALJ substituted his opinion for that of the medical expert in finding plaintiff not disabled from August 1996 and a remand is necessary.

### IV. The Record Lacks Sufficient Evidence to Support the Conclusion of No Disability

As the Commissioner has correctly stated in his motion papers, the ALJ cannot substitute his opinion for that of the medical examiners.  As the Commissioner also concedes, the ALJ completely failed to include any explanation as to why he rejected Dr. Sibley's definition of the term "fair," despite having credited the remainder of Dr. Sibley's testimony.  Although the ALJ inexplicably rejected Dr. Sibley's definition, there is no

evidence in the record that supports the ALJ's determination that a disability did not exist as of the alleged onset date, August 19, 1996.

In analyzing plaintiff's condition, Dr. Sibley relied on information he elicited from the plaintiff at the hearing, as well as his review of the following documents found in the record (Tr. 540-43): discharge summary from Niagara Falls Medical Center (Tr. 170-73), hospital records for admission from Sisters Hospital in September 1997 (Tr. 174-84), medical reports from Dr. Chandran in September 1998 (Tr. 185-99), consultative exam report by Dr. Dickinson in February 1999 (Tr. 248-49), consultative exam report by Dr. Sharma on September 28, 2001 (Tr. 709-11), and Dr. Rejendran's reports (Tr. 733-37, 826-43). Based upon these reports and the plaintiff's testimony, Dr. Sibley found that plaintiff suffered from both bipolar disorder and post-traumatic stress disorder; however, he found these impairments did not meet the requirements of the Listings (Tr. 532). Therefore, Dr. Sibley testified as to the plaintiff's mental residual functional capacity ("MRFC"), or the plaintiff's ability to perform work-related activities. Dr. Sibley found that plaintiff had a "good" ability to: remember locations and work-like procedures; understand and remember short, simple instructions; carry out short, simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work with or near others without being distracted by them; and make simple work-related decisions. Plaintiff also had a "fair" ability to: understand and remember detailed instructions; carry out detailed instructions; complete a normal workday or workweek; and perform at a consistent pace. Dr. Sibley found, however, that plaintiff's ability to maintain attention and concentration for extended periods of time was poor (Tr. 536-38, 923). Further, Dr. Sibley testified that the current severity of plaintiff's condition

existed since at least the onset date of August 15, 1996, with no substantial improvement since 1996, and no real substantial improvement was expected in the future (Tr. 533, 548-49).  Dr. Sibley also testified that plaintiff's MRFC has been the same since the onset date in August 1996 (Tr. 549).

Despite Dr. Sibley's extensive testimony, the ALJ found conflicting and contradictory evidence as to plaintiff's conditions.  Specifically, the ALJ relied on medical reports by Dr. Gunseli Sarpal, Dr. Tarik Elibol, and Dr. David Kowalski. In these reports, the ALJ found contradictory evidence as to her ability to move her upper extremities, walk under her own power, and a non-compliance with medication directives (Tr. 504).  The ALJ also discredited plaintiff's own testimony of the severity of her physical limitations and the pain she suffered.  His conclusion to discredit the plaintiff's testimony was based on her contradictory testimony relating to her past sexual abuse, education, and work history.

While it is the duty of the ALJ to reconcile conflicting testimony, the record indicates that there was no contradictory evidence as to the plaintiff's mental disability or her MRFC. The reports Dr. Sibley relied upon in making his disability determination consistently showed that the plaintiff suffered from a mental disability, specifically bipolar disorder and post-traumatic stress disorder, while the reports the ALJ relied on relate only to plaintiff's physical limitations.  Additionally, the ALJ discredited Dr. Sibley's testimony that the plaintiff was disabled as of August 1996 based on the ALJ's conclusion that a single report from 1996 was insufficient to show disability as of August 1996.  However, the ALJ relied on a single medical report by Dr. Rajendran from 2002 to conclude that the plaintiff had additional mental limitations that rendered her disabled as of June13, 2002.  The ALJ may not credit a medical expert's testimony on one hand and completely discredit his opinion

-11-

on the other.  *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) ("[W]e see no basis upon which the ALJ could reject [the doctor's] diagnosis while simultaneously relying on his opinion concerning impairment.").  Given Dr. Sibley's testimony that the record indicates disability from at least August 1996, the ALJ's determination of plaintiff's disability onset date of June 13, 2002 was arbitrary.  In light of the foregoing, the court grants the Commissioner's request for remand.  However, as there is substantial evidence to support a finding of disability under the Act, the court sees no purpose in remanding other than for the calculation of benefits.

**D.  Remand Solely for Determination of Benefits**

It is appropriate for the court to order a remand solely for the purpose of calculating benefits, "[w]here, as here, the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose . . . ."  *Soto v. Barnhart*, 242 F.Supp.2d 251, 253 (W.D.N.Y. 2003); *Curry v. Apfel*, 209 F.2d at 124 (remand for sole purpose of calculating benefits appropriate where commissioner failed to provide substantial evidence of disability and application had been pending 6 years).  Here, the plaintiff filed her initial claim with the SSA over 10 years ago.  There have been two full administrative hearings, and the record is now almost 1,000 pages in length.  No purpose would be served by a remand for further proceedings, particularly where the only question remaining is plaintiff's disability for the time period between August 15, 1996 and June 12, 2002.  The record contains persuasive proof of plaintiff's disability during this time period, and it is highly unlikely that any additional evidence will be elicited during another

administrative proceeding.  Accordingly, it is ordered that the case be remanded solely for the calculation of benefits.

## **CONCLUSION**

Based on the foregoing analysis, and after a full review of the record, the court concludes that the ALJ's decision was erroneous and not based on substantial evidence. Accordingly, to the extent that the Commissioner seeks a remand for further proceedings, the Commissioner's motion (Item 13) is denied, plaintiff's cross-motion for judgment on the pleadings (Item 14) is granted, and the case is remanded solely for the calculation of benefits.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   May   23   , 2007
p:\opinions\05-872